1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ADANTE A. HARRIS,

11            Plaintiff,                    No. CIV S-06-2138 RRB DAD P

12       vs.

13   V. DUC, et al.,

14            Defendants.              <u>ORDER</u>

15   _____/

16            Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42

17   U.S.C. § 1983 and has filed an application to proceed in forma pauperis under 28 U.S.C. § 1915.

18   This proceeding was referred to the undersigned magistrate judge in accordance with Local Rule

19   72-302 and 28 U.S.C. § 636(b)(1).

20            Plaintiff has submitted an in forma pauperis application that makes the showing

21   required by 28 U.S.C. § 1915(a).  Accordingly, plaintiff will be granted leave to proceed in forma

22   pauperis.

23            Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  <u>See</u>

24   28 U.S.C. §§ 1914(a) & 1915(b)(1).  Plaintiff has been without funds for six months and is

25   currently without funds.  Accordingly, the court will not assess an initial partial filing fee.  <u>See</u> 28

26   U.S.C. § 1915(b)(1).  Plaintiff will be obligated to make monthly payments of twenty percent of

                                              1

1  the preceding month's income credited to plaintiff's prison trust account.  These payments shall

2  be collected and forwarded by the appropriate agency to the Clerk of the Court each time the

3  amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  See 28 U.S.C.

4  § 1915(b)(2).

5       The court is required to screen complaints brought by prisoners seeking relief

6  against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C.

7  § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

8  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

9  granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

10 U.S.C. § 1915A(b)(1) & (2).

11      A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

12 Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

13 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

14 indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

15 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

16 pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

17 Cir. 1989); Franklin, 745 F.2d at 1227.

18      Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and

19 plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

20 defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

21 Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson,

22 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim a

23 complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it

24 must contain factual allegations sufficient "to raise a right to relief above the speculative level."

25 Bell Atlantic, 127 S. Ct. at 1965.  In reviewing a complaint under this standard, the court must

26 accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital

2

1  Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the

2  plaintiff, and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421

3  (1969).

4               The Civil Rights Act under which this action was filed provides as follows:

5               Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the

6               deprivation of any rights, privileges, or immunities secured by the
             Constitution . . . shall be liable to the party injured in an action at

7               law, suit in equity, or other proper proceeding for redress.

8  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

9  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

10  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

11  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

12  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

13  omits to perform an act which he is legally required to do that causes the deprivation of which

14  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

15         Moreover, supervisory personnel are generally not liable under § 1983 for the

16  actions of their employees under a theory of respondeat superior and, therefore, when a named

17  defendant holds a supervisorial position, the causal link between him and the claimed

18  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

19  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

20  allegations concerning the involvement of official personnel in civil rights violations are not

21  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

22         In the present case, plaintiff has named the following eighteen defendants:

23  Medical Director V. Duc; Medical Administrator John Doe 1; Chief Medical Officer John Doe 2;

24  Appeal Coordinator I. O'Brian; Medical Appeal Analyst P. Van Cor; Correctional Sergeant

25  Kennedy; Correctional Sergeant Goldman; Correctional Lieutenant Holmes; Correctional

26  Captain Hill; Plant Operations Manager G. Drummond; Supervisor of Building Trades P. Albee;

3

1  Administrative Director J. Woodford; Chief Deputy Warden R. Mandeville; Warden S. Kernan;

2  Registered Nurse John Doe 3; Correctional Officer Hampton; Correctional Officer

3  Merryweather; and Correctional Officer Lamkin.  In short, plaintiff claims that defendants denied

4  him his rights under the Eighth Amendment to receive adequate medical care and to be free from

5  cruel and unusual punishment while also impeding his access to the courts in violation of his due

6  process rights.

7          In support of his claims plaintiff makes the following allegations.  On our about

8  September 15, 2004, plaintiff fell from his upper bunk, felt a "snap" in the elbow area and

9  immediately experienced pain.  Defendant Dr. Duc examined him, prescribed Motrin for the pain

10  and an ice pack for the swelling and referred plaintiff for x-rays.  Defendant Dr. Duc reviewed

11  the x-ray examination which showed that plaintiff's elbow was within normal limits and did not

12  schedule a follow-up appointment.  On December 13, 2004, plaintiff went to sick call because he

13  was experiencing recurring pain in his elbow.  Defendant Duc again examined him, ordered a

14  second series of x-ray examinations and later informed plaintiff that the x-rays showed no visible

15  damage to his elbow.  Defendant Duc also submitted a request for an MRI, which defendant John

16  Doe 1 approved on February 7, 2005.

17          On March 18, 2005, plaintiff went to Doctor's Hospital of Manteca for the MRI.

18  At that time, Dr. Song finally determined that plaintiff had suffered a "complete tear of the

19  triceps tendon . . . with 4.22 cm of gap."  Plaintiff alleges that CSP-Sac received Dr. Song's

20  report and diagnosis on March 30, 2005 and was refer him for an outside orthopedic consult on

21  April 1, 2005, but that never took place.  On May 25, 2005, plaintiff saw Dr. Williams at the

22  Doctor's Hospital of Manteca for a pre-operation consultation.  Dr. Williams explained to

23  plaintiff the surgical procedure, the potential risks involved and indicated that, with immediate

24  surgery, plaintiff could expect 100 percent recovery and full use of his arm.  On June 23, 2005,

25  CSP-Sac received Dr. Williams' pre-operation report.  On July 1, 2005, plaintiff again went to

26  sick call complaining of constant and severe pain where he was examined by a nurse and referred

for a physician's appointment.  The nurse told plaintiff  that CSP-Sac was having contractual

difficulties with the Doctor's Hospital of Manteca, and as a result his doctor recommended

"immediate" surgery had not even been scheduled.

On July 16, 2005, plaintiff suffered a slip and fall accident after defective shower

drains caused flooding in his housing unit.  Due to his existing elbow injury, plaintiff was unable

to break his fall.  M.T.A. Spinks and defendants Kennedy, Hampton, and Merryweather

responded to the scene and, after a thirty minutes delay, plaintiff was taken to the prison clinic

where defendant Duc examined him and issued an emergency order that plaintiff be transported

to Mercy Hospital of Folsom.  There, Dr. Miller examined plaintiff and ordered a series of

cervical spine tests.  The tests indicated that there were no fractures, but there was a "possible

acute compression fracture at L2, and degenerative disc disease at L4-5."  Dr. Miller prescribed

no strenuous activities, Vicodin, and a follow-up visit with the doctor the next day.

Upon plaintiff's return to CSP-Sac, defendant John Doe 3 administered plaintiff's

medication but refused plaintiff's request for a wheelchair escort back to his housing unit or at

least a cane, because neither had been prescribed by the physician.  On July 19, 2005, plaintiff

saw Dr. Duc, who prescribed the use of a cane for three weeks and a back brace and issued both

devices the same day.  On July 20, 2005, M.T.A. Arong informed plaintiff that his prescription

had expired and that if he wished to continue the medication he would have to ask the building

officer, defendant Hampton, to contact the clinic.  Plaintiff did so but defendant Hampton

refused.  Thereafter,  defendant Duc denied the request and plaintiff submitted a health care

service request.

On July 20, 2005, Nurse Gunter examined plaintiff and recommended an

immediate physician's examination.  The same day, Dr. Hooper examined plaintiff and

prescribed a back brace, Gabapentin for pain, a lower bunk chrono and no lifting with a follow-

up examination in one month.  Plaintiff submitted several health care service request,

complaining that the M.T.A. staff was not issuing him his prescribed medication.  Nurse Gunter

1  reviewed his request and recommended a physician's appointment within 72 hours but the

2  medical administrator failed to schedule such an appointment.

3          On August 7, 2005, plaintiff submitted another health care service request,

4  complaining that he was in severe pain and that his elbow was locking up and inquiring about the

5  status of his surgery.  On August 10, 2005, Dr. Hooper examined plaintiff's back and

6  recommended an MRI.  On August 26, 2005, plaintiff saw Dr. Gaitone, who ordered a series of

7  x-rays.  On September 4, 2005, plaintiff submitted another health care service request,

8  complaining of continued back pain, leg numbness, and increased problems with walking.  On

9  September 9, 2005, the CSP-Sac radiologist attempted to perform the MRI, but due to plaintiff's

10 large frame, could not do so and recommended that plaintiff be sent to Mercy Hospital.  On

11 September 22, 2005, plaintiff saw defendant Duc, who noted that MRI requests for plaintiff's

12 back and elbow were still pending.  On September 29, 2005, plaintiff saw Dr. Duc again, who

13 again noted that his surgery and MRI were still being scheduled and that plaintiff should follow-

14 up in thirty days.

15         On October 18, 2005, plaintiff submitted another health care services request,

16 complaining of pain in his elbow and inquiring again regarding the status of his surgery.  On

17 October 20, 2005, he saw Dr. Duc.  Dr. Duc once again noted that plaintiff was still waiting for

18 the MRI to be scheduled but that this was the responsibility of his medical administrator.   On

19 November 11, 2005,  approximately 170-days after his pre-operation examination with Dr.

20 Williams, plaintiff finally received notification that his reconstructive surgery had been approved

21 on November 9, 2005.  On November 16, 21, 23 and 28, 2005, plaintiff submitted health care

22 service requests, complaining of increased elbow pain and inquiring about the status of his

23 surgery.  On November 29, 2005, plaintiff saw Dr. Borge who provided plaintiff with a medical

24 lay-in.  On December 1, 2005, and December 5, 2005, plaintiff submitted additional health care

25 services requests, emphasizing that his surgical ducats had been cancelled and the surgery had

26 not been re-scheduled.  On December 11, 2005, plaintiff again went to emergency sick-call and

1   was informed that he was scheduled for surgery at U.C. Davis on December 16, 2005.  The

2   surgery was later re-scheduled by U.C. Davis to January 5, 2006.

3            On December 21, 2005, plaintiff finally underwent an MRI of his back.  On

4   January 5, 2006, plaintiff eventually had reconstructive surgery on his elbow.  However, against

5   doctor's orders to remain immobile, plaintiff was transferred on January 11, 2006.

6            Plaintiff alleges that from July 19, 2005, through January 9, 2006, he submitted

7   nine administrative grievances regarding his medical care, his slip and fall accident, and the

8   alleged delays and improper responses to his previous administrative grievances.  Plaintiff claims

9   that he received responses to his grievances from Dr. Duc that contained false statements and that

10  many of his appeals were rejected as untimely.

11           Plaintiff claims that based on these facts, defendants Duc, John Doe 1, John Doe

12  2, and John Doe 3 violated his Eighth Amendment right to receive adequate medical care and

13  that defendants Duc, Van Cor, O'Brian, and Kernan violated his Due Process rights by impeding

14  his access to the court.  Finally, plaintiff claims that defendants Lamkin, Merryweather, Kennedy,

15  Goldman, Holmes, Hill, Albee, Drummond, Woodford, Mandeville, and Kernan violated his

16  right to be free from cruel and unusual punishment.  Plaintiff requests declaratory relief,

17  injunctive relief, and damages.[1]

18           The court finds that plaintiff's complaint states a cognizable claim under the

19  Eighth Amendment for inadequate medical care against defendants Duc, John Doe 1, John Doe

20  2, and John Doe 3.  If the allegations of the complaint are proven against these defendants,

21  plaintiff has a reasonable opportunity to prevail on the merits of this claim.  Plaintiff is advised,

22  however, that "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored."

23  _____

24       [1] On December 3, 2007, plaintiff filed a supplemental complaint, alleging that he has
     been forced to undergo two additional operations on his elbow, a carpal tunnel surgery and
25   arthroscopic surgery on his shoulder.  He alleges that all of these subsequent operations are a
     result of defendants' previous failure to provide him timely and adequate medical care.  Plaintiff
26   requests additional compensatory and punitive damages based upon these subsequent surgeries.

1  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  The court cannot order service of a

2  complaint on defendants not actually named in the complaint.  If plaintiff discovers the identity

3  of John Does 1-3, he should seek leave of the court to amend his complaint to name those

4  individuals.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) ("plaintiff should be

5  given the opportunity through discovery to identify the unknown defendants").  In this regard,

6  plaintiff is advised that he may amend his pleading "once as a matter of course at any time before

7  a responsive pleading is served."  Fed. R. Civ. P. 15(a).  However, once a defendant has filed an

8  answer, plaintiff may amend a pleading only by leave of court or by written consent of the

9  adverse party.  See Fed. R. Civ. P. 15(a).

10        The court also finds that plaintiff's complaint does not state a cognizable due

11  process claim against defendants Duc, Van Cor, O'Brian, and Kernan.  To state a cognizable

12  claim for denial of access to the courts, plaintiff must have incurred an "actual injury."  See

13  Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.

14  1989).  Here, plaintiff merely alleges dissatisfaction with the manner in which defendants

15  handled his administrative appeals, particularly with regards to delays in processing his appeals,

16  the content of defendants' responses to his appeals, and their rejection.  Plaintiff has not,

17  however, alleged interference or an actual injury with regard to his access to the courts.  This is

18  not a case, for example, where plaintiff was stymied by defendants from filing a civil complaint

19  in this court.[2]

20        Finally, the court finds that plaintiff's complaint does not state a cognizable cruel

21  and unusual punishment claim against defendants Lamkin, Merryweather, Kennedy, Goldman,

22  Holmes, Hill, Albee, Drummond, Woodford, Mandeville, and Kernan.  The "unnecessary and

23  wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the Eighth

24  

25     [2]  Moreover, it is worth noting that it is well established that "inmates lack a separate
constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d
26  850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Amendment United States Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). However, neither accident nor negligence constitutes cruel and unusual punishment, because "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.  Here, plaintiff claims that the defendants neglected their duties and failed to assure that inmate housing was properly maintained so as to prevent unsafe living conditions.  More precisely, plaintiff alleges that the defendants failed to report defective drains that overflowed and flooded plaintiff's housing unit, leading to his slip and fall accident.  Plaintiff's factual allegations fail to show that, objectively, he suffered a sufficiently serious deprivation or that, subjectively, each defendant had a culpable state of mind in allowing or causing the deprivation to occur.  See Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's October 23, 2006 application to proceed in forma pauperis is granted.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. The fee shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3.  Service of the complaint is appropriate for defendant Duc.

4.  The Clerk of the Court shall send plaintiff one USM-285 form, one summons, an instruction sheet, a copy of the complaint filed September 27, 2006, and a copy of the supplemental complaint filed on December 3, 2007.

5.  Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit all of the following documents to the court at the same time:

/////

a.  The completed, signed Notice of Submission of Documents;

b.  One completed summons;

c.  One completed USM-285 form for the defendant listed in number 3 above; and

d.  Two copies of the complaint filed September 27, 2006 and the supplemental complaint filed December 3, 2007.

6.  Plaintiff shall not attempt to effect service of the complaint on the defendant or request a waiver of service of summons from the defendant.  Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

DATED: March 14, 2008.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
harr2138.1a

10

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ADANTE A. HARRIS,

11            Plaintiff,                    No. CIV S-06-2138 RRB DAD P

12        vs.

13   V. DUC, et al.,                        NOTICE OF SUBMISSION

14            Defendants.                   OF DOCUMENTS

15   _____/

16            Plaintiff hereby submits the following documents in compliance with the court's

17   order filed _____:

18            ____   one completed summons form;

19            ____   one completed USM-285 form; and

20            ____   two true and exact copies of the complaint filed September 27, 2006 and

21   the supplemental complaint filed December 3, 2007.

22   DATED: _____.

23

24                                          _____
                                            Plaintiff
25

26