1

2

3

4

5

6

7

8                           UNITED  STATES  DISTRICT  COURT

9                       FOR  THE  EASTERN  DISTRICT  OF  CALIFORNIA

10

11   **Ahdante Harris,** an individual,      )          **CASE NO. S CIV 06-2138 DOC**
                                         )
12                         **Plaintiff(s),**      )
                                         )          **O R D E R**
13              **v.**                      )
                                         )
14                                         )
                                         )
15   **V. Duc,** et al.,                      )
                                         )
16                         **Defendant(s).**      )
     _____ )
17

18              Ahdante Harris ("Plaintiff") is a prisoner incarcerated at the California State Prison in San Luis

19   Obispo County, California.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and is proceeding *pro se.*

20   Plaintiff requests the Court appoint counsel to represent him in his civil case pursuant to 28 U.S.C. §

21   1915(e)(1).  At the time of the alleged constitutional violation, Plaintiff was incarcerated at California

22   State Prison, Sacramento.

23                                   **I. BACKGROUND**

24              Plaintiff is proceeding on a claim against the following defendants: Medical Director V. Duc

25   ("Duc"), M.D.; Medical Administrator ("John Doe"); Chief Medical Officer, John Howard, M.D.; Chief

26   Medical Officer Brett Williams, M.D.; and J. Martinson, R.N ("Martinson") (collectively,

27   "Defendants").  Plaintiff claims that Defendants denied him his rights under the Eighth Amendment to

28   receive adequate medical care and to be free from cruel and unusual punishment.

In support of his claims Plaintiff makes the following allegations.  On our about September 15, 2004, Plaintiff fell from his upper bunk, felt a "snap" in the elbow area and immediately experienced pain.  Defendant Duc examined him, prescribed Motrin for the pain and an ice pack for the swelling and referred Plaintiff for x-rays.  Defendant Duc reviewed the x-ray examination which showed that Plaintiff's elbow was within normal limits and did not schedule a follow-up appointment.  On December 13, 2004, Plaintiff went to sick call because he was experiencing recurring pain in his elbow.  Defendant Duc again examined him, ordered a second series of x-ray examinations and later informed Plaintiff that the x-rays showed no visible damage to his elbow.  Defendant Duc also submitted a request for an MRI, which Defendant John Doe approved on February 7, 2005.

On March 18, 2005, Plaintiff went to Doctor's Hospital of Manteca for the MRI.  At that time, Dr. Song finally determined that Plaintiff had suffered a "complete tear of the triceps tendon . . . with 4.22 cm of gap."   Plaintiff alleges that California State Prison, Sacramento ("CSP-Sac") received Dr. Song's report and diagnosis on March 30, 2005, and was referred to him for an outside orthopedic consult on April 1, 2005.  However, that consult never took place.  On May 25, 2005, Plaintiff saw Dr. Williams at the Doctor's Hospital of Manteca for a pre-operation consultation.  Dr. Williams explained to Plaintiff the surgical procedure, the potential risks involved, and indicated that, with immediate surgery, Plaintiff could expect 100-percent recovery and full use of his arm.  On June 23, 2005, CSP-Sac received Dr. Williams' pre-operation report.  On July 1, 2005, Plaintiff again went to sick call complaining of constant and severe pain where he was examined by a nurse and referred for a physician's appointment.  The nurse told Plaintiff that CSP-Sac was having contractual difficulties with the Doctor's Hospital of Manteca, and as a result his doctor-recommended "immediate" surgery had not even been scheduled.

On July 16, 2005, Plaintiff suffered a slip and fall accident after defective shower drains caused flooding in his housing unit.  Due to his existing elbow injury, Plaintiff was unable to break his fall.  After a thirty minutes delay, Plaintiff was taken to the prison clinic where Defendant Duc examined him and issued an emergency order that Plaintiff be transported to Mercy Hospital of Folsom.  There, Dr. Miller examined Plaintiff and ordered a series of cervical spine tests.  The tests indicated that there were no fractures, but there was a "possible acute compression fracture at L2, and degenerative disc disease at

1  L4-5." Dr. Miller prescribed abstention from strenuous activities, Vicodin, and a follow-up visit with

2  the doctor the next day.

3        Upon Plaintiff's return to CSP-Sac, Defendant Martinson administered Plaintiff's medication but

4  refused Plaintiff's request for a wheelchair escort back to his housing unit or a cane, because neither had

5  been prescribed by the physician.  On July 19, 2005, Plaintiff saw Defendant Duc, who prescribed the

6  use of a cane for three weeks and a back brace and issued both devices the same day.  On July 20, 2005,

7  prison staff informed Plaintiff that his prescription had expired and that if he wished to continue the

8  medication he would have to ask the building officer to contact the clinic.  Defendant Duc denied the

9  request, and Plaintiff submitted a health care service request.

10        On July 20, 2005, Nurse Gunter examined Plaintiff and recommended an immediate physician's

11  examination.  The same day, Dr. Hooper examined Plaintiff and prescribed a back brace, Gabapentin for

12  pain, a lower bunk and no lifting with a followup examination in one month.  Plaintiff submitted several

13  health care service requests, complaining that the staff was not issuing him his prescribed medication.

14  Nurse Gunter reviewed his request and recommended a physician's appointment within 72 hours, but the

15  medical administrator failed to schedule such an appointment.

16        On August 7, 2005, Plaintiff submitted another health care service request, complaining that he

17  was in severe pain and that his elbow was locking up and inquiring about the status of his surgery.  On

18  August 10, 2005, Dr. Hooper examined Plaintiff's back and recommended an MRI.  On August 26,

19  2005, Plaintiff saw Dr. Gaitone, who ordered a series of x-rays.  On September 4, 2005, Plaintiff

20  submitted another health care service request, complaining of continued back pain, leg numbness, and

21  increased problems with walking.  On September 9, 2005, the CSP-Sac radiologist attempted to perform

22  the MRI, but due to Plaintiff's large frame, could not do so and recommended that Plaintiff be sent to

23  Mercy Hospital.  On September 22, 2005, Plaintiff saw Defendant Duc, who noted that MRI requests for

24  Plaintiff's back and elbow were still pending.  On September 29, 2005, Plaintiff saw Duc again, who

25  again noted that his surgery and MRI were still being scheduled and that Plaintiff should follow up in

26  thirty days.

27        On October 18, 2005, Plaintiff submitted another health care services request, complaining of

28  pain in his elbow and inquiring again regarding the status of his surgery.  On October 20, 2005, he saw

1   Duc.  Defendant Duc once again noted that Plaintiff was still waiting for the MRI to be scheduled but

2   that this was the responsibility of his medical administrator.  On November 11, 2005, approximately

3   170-days after his pre-operation examination with Dr. Williams, Plaintiff finally received notification

4   that his reconstructive surgery had been approved on November 9, 2005.  On November 16, 21, 23 and

5   28, 2005, Plaintiff submitted health care service requests, complaining of increased elbow pain and

6   inquiring about the status of his surgery.  On November 29, 2005, Plaintiff saw Dr. Borge who provided

7   Plaintiff with a medical lay-in.  On December 1, 2005, and December 5, 2005, Plaintiff submitted

8   additional health care services requests, emphasizing that his surgical ducats had been cancelled and the

9   surgery had not been re-scheduled.  On December 11, 2005, Plaintiff again went to emergency sick-call

10  and was informed that he was scheduled for surgery at U.C. Davis on December 16, 2005.  The surgery

11  was later re-scheduled by U.C. Davis to January 5, 2006.

12      On December 21, 2005, Plaintiff finally underwent an MRI of his back.  On January 5, 2006,

13  Plaintiff eventually had reconstructive surgery on his elbow.  However, against doctor's orders to remain

14  immobile, Plaintiff was transferred on January 11, 2006.  Plaintiff alleges that from July 19, 2005,

15  through January 9, 2006, he submitted nine administrative grievances regarding his medical care, his slip

16  and fall accident, and the alleged delays and improper responses to his previous administrative

17  grievances.  Plaintiff claims that he received responses to his grievances from Duc that contained false

18  statements and that many of his appeals were rejected as untimely.

19      Plaintiff claims that based on these facts, Defendants Duc, John Doe, John Howard, M.D., Brett

20  Williams, M.D., and J. Martinson, R.N. violated his Eighth Amendment right to receive adequate

21  medical care.[1]

## II. LEGAL STANDARD

23      Federal criminal defendants are entitled to representation of counsel, and the Court has the power

24  to appoint and compensate counsel in such cases.  *See United States v. 30.64 Acres of Land*, 795 F.2d

25

26      [1]On December 3, 2007, Plaintiff filed a supplemental complaint, alleging that he has been forced to undergo two additional operations on his elbow, a carpal tunnel surgery and

27  arthroscopic surgery on his shoulder. He alleges that all of these subsequent operations are a result of Defendants' previous failure to provide him timely and adequate medical care. Plaintiff

28  requests additional compensatory and punitive damages based upon these subsequent surgeries.

1    796, 801 (9th Cir. 1986).  However, there is no constitutional right to appointed counsel in civil matters.

2    *See Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (overruled on other grounds, holding there is

3    no right to appointed counsel in section 1983 action).  The Court has no direct means to compensate

4    counsel for representing a plaintiff, nor does the Court have authority to compel an attorney to represent

5    a plaintiff.  *Mallard v. United States Dist. Court*, 490 U.S. 296, 298, 301-10 (1989).

6        In exceptional circumstances, the Court has discretion to request counsel to voluntarily provide

7    representation.  28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person

8    unable to afford counsel"); *see also Mallard*; *30.64 Acres of Land*, 795 F.2d at 798-803.  To decide

9    whether such "exceptional circumstances" exist, the Court evaluates both the likelihood of a litigant's

10   success on the merits and his or her ability to articulate claims *pro se* in light of the complexity of the

11   legal issues involved.  *Rand*, 113 F.3d at 1525; *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

12   "Neither of these factors is dispositive and both must be viewed together before reaching a decision"

13   regarding appointment of counsel.  *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

14   **III. DISCUSSION**

15       The Court does not find the required exceptional circumstances warranting the appointment of

16   counsel.  Even assuming that Plaintiff is not well versed in the law and that he has made serious

17   allegations which would entitle him to relief if proved, his case is not exceptional.  Further, at this early

18   stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the

19   merits, and based on a review of the record in this case, the Court does not find that Plaintiff cannot

20   adequately articulate his claims.

21       **A. Likelihood of Plaintiff's Success on the Merits**

22       Two elements comprise an Eighth Amendment claim for deliberate indifference to serious

23   medical needs.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*quoting Estelle v. Gamble*, 429 U.S.

24   97, 104, 97 S.Ct. 285 (1976)).

25                 First, the plaintiff must show a "serious medical need" by demonstrating

26                 that "failure to treat a prisoner's condition could result in further

27                 significant injury or the 'unnecessary and wanton infliction of pain.'"

28                 Second, the plaintiff must show the defendant's response to the need was

1    deliberately indifferent.  The second prong, "is satisfied by showing (a) a

2    purposeful act or failure to respond to a prisoner's pain or possible medical

3    need and (b) harm caused by the indifference."

4  *Id.*

5    Although Plaintiff's allegations are sufficient to state a claim for relief, it is too early for the

6  Court to determine Plaintiff's likelihood of success on the merits.  Without additional factual

7  information, the Court cannot conclude that Plaintiff is likely to succeed.  *See Bailey v. Lawford*, 835

8  F.Supp. 550, 552 (S.D. Cal.1993).

9    **B. Plaintiff's Ability To Proceed Without Counsel**

10    Plaintiff claims that because he is incarcerated, he is unable to sufficiently investigate his claims.

11  Plaintiff also argues that the adversarial relationship between inmates and prison staff has prevented him

12  from conducting interviews of the Defendants and potential witnesses.  Also, because of conflicting

13  testimony among the witnesses, Plaintiff claims he requires an attorney skilled in cross examination and

14  the tactical and strategic presentation necessary to test witness credibility.  Finally, Plaintiff argues that

15  because of the complexity of the medical issues presented and the need for an expert witness, he requires

16  the assistance of counsel.

17    To be entitled to appointed counsel, Plaintiff must also show he is unable to effectively litigate

18  the case *pro se* in light of the complexity of the issues involved. *See Wilborn*, 789 F.2d at 1331.  Courts

19  have required that "indigent plaintiffs make a reasonably diligent effort to secure counsel as a

20  prerequisite to the court's appointing counsel for them."  *Bailey*, 835 F.Supp. at 552.

21    Plaintiff has not demonstrated that he has made any attempt to obtain counsel and does not claim

22  that he has been denied legal assistance by an attorney.  Additionally, Plaintiff has not shown that he is

23  unable to proceed with his claim without an attorney.  Plaintiff has sufficiently articulated that he has

24  suffered injury from the delay and denial of medical treatment.  "[A]ny pro se litigant certainly would be

25  better served with the assistance of counsel." *Rand*, 113 F.3d at 1525; *see also Wilborn*, 789 F.2d at

26  1331 (explaining, "a pro se litigant will seldom be in a position to investigate easily the facts necessary

27  to support the case[ ]").  But Plaintiff is only entitled to appointed counsel if he can show "that because

28  of the complexity of the claims he [is] unable to articulate his positions." *Rand*, 113 F.3d at 1525.

1  Plaintiff has shown nothing in the record which makes this case "exceptional" or that demonstrates the

2  issues are particularly complex.  Plaintiff has also submitted hundreds of pages of documentation and

3  motion work.  It does not appear that Plaintiff is unable to litigate this matter himself as he has

4  sufficiently represented himself thus far, submitting ex parte applications, requests for production, and

5  motions to compel.

6      Additionally, factual disputes and anticipated cross-examination of witnesses do not indicate the

7  presence of complex legal issues warranting a finding of exceptional circumstances.  *See Rand*, 113 F.3d

8  at 1525 (holding that while the appellant might have fared better with counsel during discovery and in

9  securing expert testimony, "this is not the test[ ]").  Plaintiff's lack of legal training is not sufficient to

10 require the appointment of counsel.  The "exceptional circumstances" required for appointment of

11 counsel pursuant to 28 U.S.C. § 1915(e)(1) are absent.

12                              **IV. DISPOSITION**

13     Because Plaintiff has failed to demonstrate either a likelihood of success on the merits of his

14 claims or an inability to represent himself (beyond the ordinary burdens encountered by prisoners

15 representing themselves pro se), Plaintiff's motion is DENIED without prejudice.

16     IT IS SO ORDERED

17     DATED: July 17, 2009

18                                   _____
                                     DAVID O. CARTER
19                                   UNITED STATES DISTRICT JUDGE
                                     Sitting by Designation

20

21

22

23

24

25

26

27

28